
Andrew N. Thomases (CSB # 177339)
andrew.thomases@ropesgray.com
Andrew T. Radsch (CSB # 303665)
andrew.radsch@ropesgray.com
ROPES & GRAY LLP
525 University Avenue
Palo Alto, California 94301
Tel.: (650) 617-4000
Fax: (650) 617-4090

Attorneys for Non-Party
ROKU, INC.

FILED

MAY 04 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

CV20             80079MISC

| | |
|---|---|
| Canon, Inc.,<br><br>    Plaintiff,<br><br>v.<br><br>TCL Electronics Holdings, Ltd., et al.<br><br>    Defendants. | ) Misc. Case No. ____<br>)<br>) PENDING IN THE UNITED STATES<br>) DISTRICT COURT FOR THE EASTERN<br>) DISTRICT OF TEXAS<br>)<br>) E.D. Texas Civil Action No. 2:18-CV-0546-JRG<br>)<br>) **NON-PARTY ROKU, INC.'S MOTION TO**<br>) **MODIFY AND/OR QUASH PLAINTIFF**<br>) **CANON INC.'S SUBPOENA AND FOR A**<br>) **PROTECTIVE ORDER TO PREVENT**<br>) **REMOTE SOURCE CODE REVIEW**<br>)<br>) Date: June 5, 2020<br>) Time: 9:00 AM<br>) Place: TBD |

NON-PARTY ROKU, INC.'S MOTION TO MODIFY AND/OR QUASH PLAINTIFF CANON INC.'S SUBPOENA AND FOR A
PROTECTIVE ORDER TO PREVENT REMOTE SOURCE CODE REVIEW
Misc. Case. No. ____

ORIGINAL

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. 1
I. INTRODUCTION ......................................................................................................... 1
II. FACTUAL BACKGROUND ........................................................................................ 4
    A. The Underlying Action ...................................................................................... 4
    B. Roku Diligently Complied with Canon's Subpoena for Source Code ............... 5
    C. Roku's Efforts to Accommodate Source Code Review in Light of COVID-19 ........ 7
    D. Canon's Demand for Remote Review of Roku's Source Code ......................... 8
III. LEGAL STANDARD .................................................................................................. 10
IV. REMOTE REVIEW OF ROKU'S SOURCE CODE WILL SUBJECT ROKU TO UNNECESSARY UNDUE BURDEN AND BUSINESS RISK ................................... 10
    A. Remote Review Increases the Risk that Roku's Valuable Source Code Will Be Copied ............................................................................................................. 11
    B. Implementing Remote Review Would Be Unduly Costly .............................. 15
    C. Remote Review Is Unnecessary Because the Current Review Procedure Is Working and Compliant with COVID-19 Orders .......................................................... 16
V. CONCLUSION ............................................................................................................ 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bot M8 v. Sony,*
No. C 19-07027, Dkt. Nos. 131-33 (N.D. Cal.) .................................................................. 11

*EPL Holdings, LLC v. Apple Inc.,*
No. C-12-04306-JST(JSC), 2013 WL 2181584 (N.D. Cal. May 20, 2013) .............. 10, 12, 14

*FTC v. DirecTV, Inc.,*
No. 15 CV-01129-HSG(MEJ), 2016 WL 4154851 (N.D. Cal. Aug. 5, 2016) ..................... 10

*Generac Power Sys., Inc. v. Kohler Co.,*
No. 11-CV-1120-JPS, 2012 WL 2049945 (E.D. Wisc. June 6, 2012) ................................. 14

*GeoTag Inc. v. Canon, Inc. et al.,*
No. 2:12-cv-00043-JRG, Motion for Protective Order, Dkt. No. 76 (E.D. Tex.
Sept. 27, 2012) ............................................................................................................... 12, 13

*Imageware Sys., Inc. v. Fulcrum Biometrics, LLC,*
No. 13CV936-DMS(JMA), 2014 WL 12489939 (S.D. Cal. Nov. 26, 2014) ....................... 11

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.,*
No. 09-cv-01967 CW (NC), 2012 WL 4846522 (N.D. Cal. Aug. 7, 2012).......................... 10

*Synopsys, Inc. v. Ubiquiti Networks, Inc.,*
No. 17-cv-00561-WHO (LB), 2018 WL 2294281 (N.D. Cal. May 21, 2018) ............... 12, 14

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.,*
No. 1:15-cv-00211(LGS)(SDA), 2018 WL 722480 (S.D.N.Y. Jan. 30, 2018) .................... 14

*Telebuyer, LLC v. Amazon.com, Inc.,*
No. 13-cv-1677, 2014 WL 5804334 (W.D. Wash. July 7, 2014) ........................................ 12

NON-PARTY ROKU, INC.'S MOTION TO MODIFY AND/OR QUASH PLAINTIFF CANON INC.'S SUBPOENA AND FOR A PROTECTIVE ORDER TO PREVENT REMOTE SOURCE CODE REVIEW
Misc. Case. No. _____

ii

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE, that on June 5, 2020 at 9:00 AM, or as soon thereafter as the matter may be heard, Non-Party Roku, Inc. ("Roku") will and hereby does move for an order granting the attached Motion to Quash and/or Modify Subpoena and for a Protective Order.

To prevent undue burden on Roku that would result if the subpoena *duces tecum* served on it by Canon, Inc. ("Canon") in the action captioned *Canon, Inc. v. TCL Electronics Holdings Ltd., et al.*, No. 2:18-CV-546-JRG (E.D. Tex.) ("Underlying Action") were enforced as Canon demands, Roku files this Memorandum of Points and Authorities in support of seeking a protective order, pursuant to Federal Rule of Civil Procedure 26(c), and to quash or modify Canon's subpoena to non-party Roku, pursuant to Federal Rule of Civil Procedure 45(d)(3). Canon has demanded that Roku, a non-party to the Underlying Action, produce for review and inspection all of Roku's proprietary and valuable source code for the Roku operating system—the crown jewel and core asset of Roku's business—not in a secured and monitored environment typical for source code review, but over a computer network so that Canon's attorneys and experts can remotely review that source code from anywhere in the world, including their own living room. Roku seeks protection against this unprecedented, unnecessary, and unjustifiable risk to its key business asset.

The Motion to Quash and/or Modify Subpoena and for a Protective Order is based upon this Notice of Motion, Motion, Memorandum of Points and Authorities, and on other such evidence as may be presented in connection with this Motion. Roku hereby certifies that it has in good faith conferred with Canon in an effort to resolve the issues presented in this Motion without Court action.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

Roku is a $13.5 billion public technology company built around its core asset—the Roku operating system ("Roku OS"). Its most recent Form 10K annual filing characterizes the Roku OS as central to Roku's platform. The Roku OS is the product of hundreds of thousands of

hours of developer and engineer time creating, writing, refining, and improving the human readable source code used to create the Roku OS. Much of the value of the Roku OS and by extension the value of Roku, which employs hundreds of people in the Bay Area and supports the employment of hundreds or thousands more through its streaming media platform, arises from the fact that the Roku OS is proprietary technology to Roku. Because any person with a copy of the Roku OS source code could, at minimal cost and effort, recreate the Roku platform exactly; and because any person with a copy of that source code could use knowledge gained from that source code to compromise the security and intellectual property of Roku content partners, such as Netflix, Hulu, and others; the Roku OS source code is kept secret and tightly controlled. Loss or misuse of that source code, whether advertent or accidental, would be devastating to Roku, and could be devastating to its partners. This motion asks this Court to allow Roku to continue to protect its proprietary source code in the face of a subpoena and additional demands by the propounding party that would place Roku's source code at great risk.

Plaintiff Canon, Inc. ("Canon") sued certain TCL entities in the Eastern District of Texas. TCL makes televisions. Some of those televisions incorporate the Roku OS. Canon alleges that these TCL televisions with the Roku OS (called TCL "Roku TVs") infringe Canon's patents. Canon does not compete with TCL or Roku in the market for televisions or in any other market.

Roku is not a party to the underlying litigation, but that has not stopped Canon from subjecting Roku to expansive and burdensome discovery demands. Canon has served sixty-nine document requests and nearly twenty deposition subpoenas on Roku and its employees. At issue here is Canon's demand that Roku produce the entirety of the Roku OS source code in response to Canon's Subpoena, not in a controlled and secured review environment, but rather over a network so that Canon's counsel and paid consultants can remotely access it from anywhere in the world, including from their own homes.[1]

---

[1] Roku has separately filed in this District a motion to quash or modify Canon's Subpoena with respect to certain requests for production of agreements and financial documents. That motion, which is being filed under seal, contains additional details regarding the business relationship between Roku and Defendants with respect to the Underlying Action. Because the issues

A court must quash a subpoena that imposes an undue burden on the recipient. It is difficult to envision a more burdensome imposition than requiring Roku to sacrifice the security and secrecy of its core asset, its crown jewel, by making it available for remote, at-home review for the convenience of Canon's counsel and paid consultants. Remote review of source code inherently does not and cannot provide the same safeguards available for in-person review at a controlled, monitored location, such as outside counsel's office—the typical and widely adopted approach for source code review. Remote review allows for illicit electronic copying of the source code and exfiltration of it from the networked host computer—risks that simply do not exist with a live, controlled review.

The unnecessary and undue burden of Canon's demand for remote access to Roku's source code is amplified by the fact that Canon's consultants already are successfully and safely reviewing that source code in person at a secure and largely empty location. Specifically, at Canon's request, Roku has made its source code available in Alexandria, VA, where shelter in place orders permit travel for work purposes, at the near-empty offices of Roku's outside counsel there. Canon requested the source code be made available there because its experts are there. Roku accommodated that request but Canon has nevertheless demanded that Roku put its source code on a networked computer so that Canon's counsel and experts can review it from home, where they cannot be closely monitored. At the same time, its experts continue to review the source code in-person in Alexandria, VA, having conducted at least eight days of in-person review so far without any issues, and having scheduled at least four more days in early May.

Roku is sensitive to the challenges created by the COVID-19 pandemic and it has worked hard to address them—for example, by making its source code available for review near to Canon's experts in a secure, largely-empty location, where all persons can and do maintain proper social distancing, and which is cleaned before and after every review—but non-party

---

addressed by this Motion are distinct from that other motion, and because the issues presented by this motion likely are of significant interest to other California and national technology companies navigating the challenges of COVID-19 while also seeking to protect their core intellectual property, Roku is filing this Motion apart from its other motion to quash.

Roku should not be forced to put at great peril the source code for its key asset by making it available for remote review. Because Canon has taken the position that in response to Canon's Subpoena Roku is required to produce the complete Roku OS source code and to make it available for remote access and review, Roku moves to quash or modify Canon's Subpoena and for a protective order to prevent remote review of Roku's source code.

## II.   FACTUAL BACKGROUND

### A.   The Underlying Action

In the Underlying Action, Canon asserts claims of infringement against various foreign TCL entities based on the distribution and sale in the United States of TCL-branded Roku TVs. D.I. 1, 22.[2,3] Roku licenses its Roku OS operating system and smart TV hardware reference designs to TV brand partners, who manufacture and distribute TVs based on Roku's designs. Ex. A at 5.[4] Roku itself does not sell TVs. In 2014, Roku partnered with TCL, who wanted to develop TCL branded Roku's TVs based on Roku's proprietary technologies, including the Roku OS. *See* Ryan Lawler, "Roku Moves Beyond the Box, Partnering with Hisense and TCL to Introduce Roku TVs," TechCrunch (Jan. 6, 2014), http://techcrunch.com/2014/01/05/roku-tv. TTE Technology, Inc. ("TTE"), which is the U.S. subsidiary of one of the TCL defendants, has exclusive responsibility for importing, marketing, and distributing the accused TCL Roku TVs in the United States. D.I. 19 at 3. Canon's infringement allegations target alleged features and functionality used in the TCL Roku TVs. D.I. 1, 22.

Canon filed suit in the Eastern District of Texas. *Canon, Inc. v. TCL Electronics Holdings Ltd., et al.*, No. 2:18-CV-546-JRG (E.D. Tex.). No party to the Underlying Action is located in that district or has a place of business there. D.I. 59 at 3. In its Amended Complaint,

---

[2] "D.I." refers to the Docket Index of the Underlying Action.

[3] Canon originally sued one foreign TCL entity, D.I. 1, and later added seven more foreign TCL entities. D.I. 22. Four of those defendants were dismissed. D.I. 83. The remaining defendants in the Underlying Action are TCL Electronics Holdings, Ltd., Shenzhen New Technologies Co., Ltd., TCL King Electrical Appliances (Huizhou) Co., Ltd., and TCL Corporation.

[4] "Ex. _" refers to an exhibit to the Declaration of Andrew T. Radsch, submitted herewith.

NON-PARTY ROKU, INC.'S MOTION TO MODIFY AND/OR QUASH PLAINTIFF CANON INC.'S SUBPOENA AND FOR A PROTECTIVE ORDER TO PREVENT REMOTE SOURCE CODE REVIEW
Misc. Case. No. _____

4

Canon refers to Roku by name over eighty times, accuses Roku of directly infringing Canon's patents, and targets Roku's proprietary technologies. D.I. 22. But Canon chose not to name Roku as a defendant in the Underlying Action because, if Canon named Roku as a defendant, Canon could not maintain venue in the Eastern District of Texas. Roku, which is headquartered in Los Gatos, CA, does not have a place of business in the Eastern District of Texas, and naming Roku would have made venue improper there. Thus, Roku is a third party in the Underlying Action. The same is true for TTE, which is also based in California but not named as a defendant in the Underlying Action, despite being referenced over fifty times in the Amended Complaint. D.I. 22; D.I. 59 at 3.

On September 12, 2019, Defendants timely sought transfer of venue to the Northern District of California under § 1404, as no party, document, or witness is present in the Eastern District of Texas, and the vast majority of Roku's and TTE's (the most relevant third parties) witnesses and documents are located in California. D.I. 59. Seven months after Defendants moved, the Eastern District of Texas court denied the transfer motion, in part citing the familiarity it gained with the case during the pendency of the motion. D.I. 145.

Canon is not a competitor in the TV market. And despite the fact that the patents issued between 2010 and 2014, Canon did not file suit until December 2018. Canon did not allege any pre-suit notice or offer to license to Defendants, TTE, or Roku. *See* D.I. 22.

### B. Roku Diligently Complied with Canon's Subpoena for Source Code

On December 23, 2019, Canon served on Roku a subpoena for the production of documents (the "Subpoena").[5] The Subpoena is attached as Exhibit B and demands compliance in this District. Canon's Request No. 13 demands source code "relevant to" seven alleged "features" of Roku's proprietary operating system, such as "receiving streaming content," "playing streaming content," and "accessing a URL of streaming content." *Id.* Appended to the Subpoena was a copy of the Protective Order entered in the Underlying Action, which, among

---

[5] Canon also has served on Roku a second document subpoena and two corporate deposition subpoenas with twenty-six deposition topics. In addition, Canon has subpoenaed 17 Roku individual employees for deposition.

other things, allowed for the production of any source code in only a single manner: on a standalone, secured computer not connected to the Internet and housed at outside counsel's offices. *Id.* at 22-24. Additional safeguards included the ability to monitor the person reviewing the source code and to control the space in which the review proceeded. *Id.* at 22-23. The Protective Order also limited the reviewing party to four printouts, restricted any photocopying of the source code, and prevented the source code from being transported or transmitted electronically. *Id.* at 24-25.

Roku timely served its objections and responses to the Subpoena on January 13, 2020 and, in reliance on the safeguards set forth in the Protective Order for the production of source code, Roku conducted a diligent search for and collection of the source code relevant to the seven alleged features of the Roku OS specified in Canon's Subpoena. Roku made all of the source code Canon requested available for inspection at counsel Ropes & Gray's office in East Palo Alto, CA in accordance with the Protective Order then entered in the Underlying Action. Canon's expert began reviewing Roku's source code on February 4. Ex. C at 1.

Even though Roku produced the specific source code requested by the Subpoena, Canon demanded by email and letter that Roku produce even more source code. Roku collected that additional source code that Canon demanded and made that source code, including the full source code for the Roku iOS and Android mobile applications, available for review starting February 26. Ex. E at 46. Again Canon demanded more code, this time requesting nearly the entirety of Roku's code base, despite having served a far more targeted subpoena request. *Id.* at 30-31. Throughout February and March, Roku continued to collect additional source code and made that available for review. Roku continued to accommodate Canon's requests, such as consolidating the disparate code collections onto one computer. *Id.* at 27. By March 23, Roku had collected all of the code requested by all of Canon's letter demands and had that ready for review on a secured computer. *Id.* at 21.

NON-PARTY ROKU, INC.'S MOTION TO MODIFY AND/OR QUASH PLAINTIFF CANON INC.'S SUBPOENA AND FOR A PROTECTIVE ORDER TO PREVENT REMOTE SOURCE CODE REVIEW
Misc. Case. No. _____

6

### C. Roku's Efforts to Accommodate Source Code Review in Light of COVID-19

On March 20, in response to the COVID-19 pandemic and the California shelter-at-home order, Roku informed Canon that it would be moving the source code review computer from Palo Alto to co-counsel Haltom & Doan's office in Plano, Texas, in the Eastern District of Texas, where Canon filed suit. Ex. D. That computer contained all of the code Canon originally requested in its Subpoena, plus all of the code it additionally demanded in subsequent correspondence. Roku transported that laptop by personal courier to Texas at great expense. It gave notice to Canon of its plan to do so, and Canon raised no objection or concern. Ex. E at 21. Canon has never reviewed that source code computer.

Despite Roku producing all source code reasonably relevant to the functionalities requested in Canon's Subpoena and more, Canon eventually began to demand that Roku produce the source code for the *full and complete* Roku OS—a request that was not included in Canon's Subpoena. *See* Ex. B (request 13 asking for source code "relevant to" certain features); Ex. E at 32, 36. The Roku OS is Roku's most valuable asset and the core of its business, and as such, Roku had never previously made its full Roku OS source code available in litigation due to the serious security risks of doing so. Ellison Decl. ¶ 7. On March 24, in order to avoid continued disputes about its source code production and to avoid burdening the courts with motion practice, which Canon improperly threatened to bring against Roku in the Eastern District of Texas, Roku agreed to make available source code for its full OS in Plano or Texarkana, Texas, again in the Eastern District of Texas and again at great expense to Roku. Ex. E at 17. Roku noted that it would approve designation by Canon of additional experts in the Texas area, if needed. *Id.* Canon did not locate a single expert in the Dallas/Plano area.

On March 26, Canon stated that due to its experts' location in the Washington D.C. area, age, living situation, or other personal circumstances, its current experts were unwilling to travel to Texas, and requested Roku to make its source code available in Ropes & Gray's Washington D.C. office, or at third party facility in the D.C. area. Ex. E at 16, 19. Again, at great expense and with notice and without objection by Canon, Roku had a laptop containing the full Roku OS

(minus a few security/encryption features) hand-carried securely to the D.C. area from the Bay Area. Ex. E at 9-10.

Roku arranged to have its laptop containing the full Roku OS source code available at the offices of Roku's outside counsel, Oblon, McClelland, Maier & Neustadt, LLP ("Oblon") in Alexandria, VA.[6] *Id.* Only a few individuals are currently working from the Oblon office and a dedicated space was set aside for the source code review, to ensure that safe social distancing can and would be practiced. *Id.* The reviewers can review the code while alone in the review room. In addition, Roku's counsel informed Canon that there was ample free parking around the Oblon office, making use of public transportation unnecessary. *Id.* Oblon also agreed to clean and disinfect the workspace surfaces before and after the review expert arrives and leaves each day. *Id.* at 1. Roku offered to arrange for any other requested protocols for the review, and again noted that it would not object to Canon designating additional experts to review the source code who did not have the same personal concerns as Canon's current experts and would work to expedite the approval of any such expert. *Id.* at 9-10.

After initially stating that it was unwilling to retain a new expert and that it would not proceed with review in the DC area, on April 13, Canon informed Roku that its expert would review the source code at Oblon's office in Virginia. *Id.* at 2. Canon further requested expedited approval of another expert to review the source code, which Roku and the TCL defendants promptly granted. Ex. F at 1-2. Canon's experts have conducted at least eight days of in-person review at Oblon and continue to do so as of the filing of this Motion, with four days of review scheduled for the first full week of May.

### D. Canon's Demand for Remote Review of Roku's Source Code

On April 10, 2020, Canon's counsel wrote to counsel for Roku stating that Canon has "been pushing for remote source code review for weeks" but since Roku would not agree the parties were "thus at the same impasse we were weeks ago," and threatened to move to compel.

---

[6] Virginia's shelter-in-place orders allow for professional businesses to remain open, and for people to travel to and from work. *See* Va. Exec. Order No. 53 (Mar. 23, 2020), No. 55 (Mar. 30, 2020)

Ex. E at 6. As noted above, however, on April 13, Canon reversed course and agreed to have its experts review the source code at Oblon.

But then, just ten days later on April 23, despite the fact that Canon's experts had been successfully reviewing the code in compliance with Virginia's COVID-19 orders—and no circumstances had changed—Canon renewed its demand that Roku make its full Roku OS source code available for remote review.[7] Ex. E at 1. Accordingly, the parties reached an impasse on what Roku's obligations are under Canon's Subpoena.

By remote review, Canon would require Roku to make available its source code "on a standalone computer ('remote computer') at the producing party's outside counsel (or a vendor thereof) remotely connected to a laptop ('reviewing computer') for reviewing the Source Code ('remote review')." Ex. G at 6 (attachment to email sent Apr. 10, 2020, 6:27 PM, Ex. E at 3-4). Further, Canon seeks to require Roku to "ship the reviewing computer" to the reviewer to access the source code through a "remote computer" via a "VPN or other secure connection." *Id.* at 9. Roku may also ship "a wifi or cellular camera" that the reviewer "will position . . . in his or her reviewing room so as to allow the producing Party to view the representative's activities." *Id.* Roku may also monitor the reviewer's "actions on the remote computer by tracking or logging those activities." *Id.* at 8. Finally, according to Canon's demands, "[a]ll fees and costs associated with making any Source Code Material available for inspection . . . shall be paid by the producing Party," Roku. *Id.* at 7.

Remote review of the source code creates a risk of copying. Ellison Decl. ¶ 13. A reviewer can use an external recording device, such as a camera or a cell phone, to record the review computer screen. *Id.* ¶ 14. This recording device can be hidden out of the view of the

---

[7] Canon simultaneously filed an expedited motion to modify the protective order in the Underlying Action to allow for remote review to be required at the requesting party's election. D.I. 140. Resolution of that motion would not resolve the present Motion. Roku is not a party to the Underlying Action, and that motion to modify the protective order does not concern or address the burden to non-party Roku of producing its complete OS source code for remote review. Rather, that motion merely seeks an option for remote review. Here, as relates to Roku, Canon has taken the position, even before Canon filed its motion to modify the protective order, that Roku is required to produce its source code for remote review in response to Canon's Subpoena, which designates the Northern District of California as the place of compliance.

producing party. *Id.* A reviewer may use his or her connection to the host computer, which must be connected to an internet connection, to send the code out over the internet. *Id.* ¶ 15.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 45(d)(1), the party serving subpoena must "take reasonable steps to avoid imposing undue burden or expense on a person subject to a subpoena," and the court where compliance is requested "must enforce this duty . . . on a party or attorney who fails to comply." Thus, the court "*must* quash or modify a subpoena that . . . 'subjects a person to undue burden.'" Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-01967 CW (NC), 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012).

Further, once "good cause" is shown, courts may issue protective orders to protect any person from "annoyance, embarrassment, oppression, undue burden or expense," including by "prohibiting disclosure or discovery." Fed. R. Civ. P. 26(c); *FTC v. DirecTV, Inc.*, No. 15 CV-01129-HSG(MEJ), 2016 WL 4154851, at *1 (N.D. Cal. Aug. 5, 2016). Showing that "specific prejudice or harm will result if the protective order is not issued" satisfies showing "good cause." *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306-JST(JSC), 2013 WL 2181584, *1 (N.D. Cal. May 20, 2013). Rule 26(c) grants courts "broad discretion" to issue a protective order. *DirecTV*, 2016 WL 4154851, at *1.

## IV. REMOTE REVIEW OF ROKU'S SOURCE CODE WILL SUBJECT ROKU TO UNNECESSARY UNDUE BURDEN AND BUSINESS RISK

Allowing Canon's experts to access to the full Roku OS source code or any meaningful portion of it remotely would subject Roku to undue burden. First, remote review of the full Roku OS source code—Roku's most valuable asset—substantially increases the risk that Roku's source code will be inadvertently or maliciously copied. Second, Canon's proposed remote review procedure would require Roku to expend significant time and resources to monitor the review process. Lastly, a new, burdensome remote review procedure is unnecessary: Canon's experts have been successfully reviewing Roku's source code at Oblon's offices, a secure

location, in Alexandria, VA, where Canon itself requested review to take place in light of COVID-19 concerns. If Canon's counsel and experts are allowed to remotely inspect Roku's source code, Roku will be specifically harmed by the risk of inadvertent or illicit disclosure or copying of its valuable, proprietary source code. And since, at Canon's insistence, Roku has made available the source code for its full Roku OS, the potential magnitude of loss due to any disclosure is greatly compounded.

### A. Remote Review Increases the Risk that Roku's Valuable Source Code Will Be Copied

As with many technology companies, Roku's proprietary source code is its most valuable business asset. Ellison Decl. ¶ 7; *see also Imageware Sys., Inc. v. Fulcrum Biometrics, LLC*, No. 13CV936-DMS(JMA), 2014 WL 12489939, *1 (S.D. Cal. Nov. 26, 2014) ("Courts have consistently acknowledged the importance of source code and the fact that it is often one of the most valuable assets a company possesses.") (issuing order preventing reviewer from inspecting print copies of source code). Indeed in its most recent Form10-K annual filing, Roku states: "Central to our platform is the Roku operation system ('Roku OS')." Ex. A at 5. Roku has spent hundreds of thousands of hours writing, refining, and optimizing the Roku OS, which reflects Roku's vast experience in the technological space. Ellison Decl. ¶ 7.

In response to Canon's demands, which extended beyond the scope of its Subpoena, and in reliance on the protective order then in place, Roku made available the source code for its full Roku OS, which is the crux of its business and highly sensitive proprietary technology.[8] *See* Ellison Decl. ¶ 7. Canon's Subpoena requested production of source code relevant to only a few alleged functionalities. Ex. B, Request No. 13. But Canon subsequently demanded production of the full Roku OS, threatening to move to compel if Roku did not submit to that demand.

---

[8] In its Motion to Modify the Protective Order in the Underlying Action, Canon cited *Bot M8 v. Sony*, No. C 19-07027, Dkt. Nos. 131-33 (N.D. Cal.), where Sony agreed to permit remote review of the source code at issue there. However, that was an agreed-upon procedure likely because, unlike Roku's full OS source code, Sony made available only the modules related to the accused functionality of the video games at issue there. *See id.* Dkt. No. 126 at 1 (Sony provided "source code . . . for the accused features at issue"); Dkt. No. 126-4 at 2 (requesting "client-side-specific modules related to the accused matchmaking functionality and multiplayer functionality").

Accordingly, and pursuant to the protective order then in place, Roku made the full Roku OS available for review and inspection—an unprecedented move for Roku and one that already placed its source code at significant risk. *See* Ellison Decl. ¶ 7.

Due to the "extremely sensitive nature" of source code—any person with access can copy and utilize the source code at little cost and effort—any review at all poses incredible risks. *See id.*; *Telebuyer, LLC v. Amazon.com, Inc.*, No. 13-cv-1677, 2014 WL 5804334, *2 (W.D. Wash. July 7, 2014) ("Source code is 'highly confidential, technical information' that creates a 'heightened risk of inadvertent disclosure.'") (citing *Kelora Sys., LLC v. Target Corp.*, 2011 WL 6000759, at *7 (N.D. Cal. Aug. 29, 2011)). In view of these risks, parties, including Canon in the Underlying Action, frequently include in protective orders specific provisions for heightened protection of source code, such as dictating the location of the review. *See, e.g.*, D.I. 79 ¶ 10; *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO (LB), 2018 WL 2294281, *2 (N.D. Cal. May 21, 2018) (denying request to allow experts to produce printouts of source code); *EPL Holdings, LLC v. Apple Inc.*, No. C-12-04306 JST (JSC), 2013 WL 2181584 (N.D. Cal. May 20, 2013) (issuing protective order banning mobile devices and limiting printouts and electronic copies in source code review).

Reflecting these risks, the original protective order in the Underlying Action, to which Canon agreed, stipulated that, among other limitations, (i) source code shall be provided only a non-networked "stand-alone" computer, (ii) review shall take place only "at the offices of the producing Party's outside counsel," (iii) "no physical copies of all or any portion of the Source Code Material may leave the source code review room," (iv) only four limited printouts could be requested, and (v) source code "may not be transported or transmitted electronically over a network of any kind." D.I. 79 ¶ 10. This protective order was attached to the Subpoena, and third party Roku made available its full Roku OS source code in reliance on the protections set out there.

In other cases, Canon has insisted on similar protections, citing concerns of disclosure of highly sensitive source code: "Defendants' source code is some of the most highly important

NON-PARTY ROKU, INC.'S MOTION TO MODIFY AND/OR QUASH PLAINTIFF CANON INC.'S SUBPOENA AND FOR A PROTECTIVE ORDER TO PREVENT REMOTE SOURCE CODE REVIEW
Misc. Case. No. _____

12

and sensitive material that Defendants will disclose in this litigation. Defendants do not want to create the opportunity for even inadvertent copying of Source Code in circumvention of the carefully drafted Source Code provisions of the Protective Order." *See GeoTag Inc. v. Canon, Inc. et al.*, No. 2:12-cv-00043-JRG, Motion for Protective Order, Dkt. No. 76 (E.D. Tex. Sept. 27, 2012); *see also id.*, Order, Dkt. No. 110 at 6-7 (E.D. Tex. Jan. 8, 2013) ("Given the highly confidential nature of their source code, Defendants do not want to create even a mere possibility of inadvertent copying of the code. Defendants are willing to allow the use of cellular telephones and note-taking computers near the secure room, but not within it."). These protective orders, including in the Underlying Action, recognize that source code is highly sensitive and at great risk of being inappropriately copied, and attempt to minimize this risk by preventing or limiting any printout copies, preventing the use of cell phones in the review room, dictating that the review take place in a secure location, and requiring review to take place on a non-connected computer.

Remote review of source code, as Canon is now demanding, exacerbates these risks significantly and either nullifies these limitations or makes them hard or impossible to enforce. Roku has a stringent policy on accessing source code even for its own employees. Ellison Decl. ¶ 8. As maintaining secrecy of the source code is critical to its business, Roku does not allow many of its own foreign employees access to the source code to prevent any unauthorized disclosure, even though this limitation reduces the potential productivity of these employees. *Id.* Prior to the COVID-19 pandemic, Roku did not allow its own employees to access the Roku OS source code remotely. *Id.* ¶ 9. While certain Roku employees now can access the source code remotely, Roku has only taken on this significant risk, in light of the extraordinary circumstances, to keep its business operational. *Id.* Canon's proposed remote review procedure would allow Canon's reviewer access to Roku's source code that it does not typically allow for its own employees.

Conducting source code review on a non-networked computer in a closely monitored location eliminates or minimizes any security concerns associated with any inadvertent or

malicious external hacking or security breaches. Because Roku values its source code so highly, Roku has undertaken great expense to have a non-connected review computer couriered across the country to accommodate Canon's request to review the code in the DC area, as opposed to electronically transmitting the code. Canon's remote review demand, as outlined in its proposed amended protective order, would allow review via "remote access to the remote computer via VPN" or other connection. D.I. 140, Ex. A ¶ 10. Thus, the computer hosting the source code review must be connected to the internet, which connection the reviewer or another actor could leverage to send the code over the internet to another location. *See* Ellison Decl. ¶ 15-16. This creates unwarranted and undue risk of a security breach, exposing Roku to incredible liability of loss, especially in light of the fact that Canon has demanded that Roku make available its full Roku OS source code. *See, e.g., Generac Power Sys., Inc. v. Kohler Co.*, No. 11-CV-1120-JPS, 2012 WL 2049945, *2 (E.D. Wisc. June 6, 2012) (denying motion to compel "full disclosure" of source code, recognizing the risk of copying "one of the most valuable assets a company possesses"). This threat of breach is not merely theoretical: Roku perpetually faces thousands of daily attacks from hackers. *See* Ellison Decl. ¶ 10.

There is no way to fully eliminate the potential that Roku's source code is illicitly copied in a remote review. Once a reviewer accesses the source code via a networked connection, which has to be enabled to allow remote review, there is little to stop that person from uploading that source code to some other website or networked location. And, unlike with review in a secure room, Roku will be unable to ensure that no recording device, such a phone or camera, is capturing its proprietary source code. *See, e.g., EPL Holdings*, 2013 WL 2181584, at *6 ("Apple's main concern is that the cellphone would include a camera that could make an unauthorized recording of the source code. . . . The Court accordingly finds that Apple's proposed ban on cellphones and other similar devices is reasonable."). Canon's proposed solution of having the expert "position [a] camera in his or her reviewing room so as to allow the producing Party to view the representative's activities" is a wholly inadequate safeguard. *See* D.I. 140, Ex. A ¶ 10. While in a secure room, Roku and Roku's counsel can control the

entire environment; in remote review, Roku has no way of knowing whether its source code is being copied or recorded by a device that is out of the camera's view or otherwise not readily captured by a camera. This potential for unauthorized copying is precisely the reason that protective orders require the review to take place in a secure room controlled by the producing party, such as in counsel's office. *See, e.g., Synopsys*, 2018 WL 2294281, *3 (requiring review in counsel's office); *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp.*, No. 1:15-cv-00211(LGS)(SDA), 2018 WL 722480, *3 (S.D.N.Y. Jan. 30, 2018) (denying request for electronic production of source code and requiring plaintiff to "inspect the source code-related information in [defendant's] office").

Any unauthorized copying of Roku's source code would cause Roku, and Roku's business partners, significant business harm. Not only would this allow for the dissemination to competitors or malicious actors of Roku's source code, which it has expended incredible time and resources in developing, but any breach could also compromise the intellectual property of Roku's content partners, such as Netflix or Hulu. *See* Ellison Decl. ¶ 12. With access to Roku's source code, one could also access certain parts of the memory which could be used to leverage this third party intellectual property. *Id.* Roku's partners rely on Roku's ability to build secure platforms—a breach caused by remote review would harm these partners and damage Roku's ability to maintain its critical business partnerships. *Id.* Remote review of Roku's source code poses unacceptable risk to Roku and Roku's partners.

### B.     Implementing Remote Review Would Be Unduly Costly

In addition to the burden associated with risk of loss, Canon's proposed remote review procedure places additional undue burden on Roku. Roku would have to spend considerable resources developing technological safeguards to implement on the review computer, in order to mitigate, as much as possible, the risk that data is copied. *See id.* ¶ 18. Canon's alleged safeguards, on top of being inadequate at ensuring security, would require someone to monitor the camera set up in the reviewer's room and someone else to monitor the activities being performed (*e.g.*, keystrokes and file activities) on the actual review computer at each and every

moment of the review. *See* D.I. 140, Ex. A ¶ 10. This requires two people to monitor the reviewer for the entirety of the review time, as opposed to review in outside counsel's office, which merely requires setting up a secure room and controlling who and what enters the room. This is an additional, unnecessary burden on Roku's time and resources. Those costs are in addition to the costs of creating and transporting review and host computers required under Canon's demanded remote review procedure.

### C. Remote Review Is Unnecessary Because the Current Review Procedure Is Working and Compliant with COVID-19 Orders

Roku is cognizant of and sensitive to the challenges and risks posed by the COVID-19 pandemic and resulting governmental restrictions on travel and other activities, however, a remote review option is unnecessary as the current secure review procedures are already facilitating efficient and safe discovery. Canon's experts have been successfully reviewing Roku's source code in Oblon's offices in Virginia, in compliance with the protective order in the Underlying Action as attached to the Subpoena. To date, Canon's experts have spent at least eight days at Oblon (with four additional days already scheduled) and well over fifteen days total reviewing Roku's source code in person. Indeed, Roku moved its source code to Virginia at Canon's request as a result of the obstacles in California posed by the current COVID-19 pandemic. Roku also granted Canon's request for expedited approval of a second DC-based expert to review the source code in Virginia. The review has also been conducted in compliance with Virginia's COVID-19 related executive orders, which allow for business operations offering "professional" services to remain open and for travel to and from the workplace. *See* Va. Exec. Order No. 53 (Mar. 23, 2020), No. 55 (Mar. 30, 2020). Oblon's offices observe social distancing practices, and the workspace surfaces of the review room are sanitized before the arrival and after the departure of the reviewers. These procedures have allowed Canon to review Roku's source code without subjecting Roku to the burden of unnecessary risk of loss.

In addition, the source code could be made available for in-person review in the Eastern District of Texas, where Canon chose to file the Underlying Action, as Roku had offered. The Governor of Texas allowed the state's stay-at home order to expire as of April 30, 2020, and he

is allowing non-essential businesses to re-open for business.[9] The only impediment to Canon pursuing review in the District where it filed suit and where it argued the case would be most conveniently tried, is Canon's decision to retain experts that live elsewhere, who are unable or do not want to travel, and to not hire additional experts that live in or near to the District where it filed suit. Those decisions should not require Roku to now make its source code available via procedures that are insecure, risky, and costly.

The full Roku OS source code is highly sensitive and valuable to Roku. Remote review greatly increases the risk of inadvertent or malicious disclosure or copying, exposing Roku to acute financial harm. This risk can be avoided entirely, as review of Roku's source code has proceeded without issue, in full compliance with the applicable state orders. The great risk of harm combined with the acceptable alternative that is currently working show that remote review would subject Roku to unnecessary undue burden.

## V.  CONCLUSION

For the foregoing reasons, Roku requests the Court quash and/or modify Canon's Subpoena or enter a protective order to prevent Canon from demanding remote review of Roku's source code.

Dated: May 1, 2020

Respectfully submitted,

By: /s/ Andrew T. Radsch
Andrew N. Thomases (CSB # 177339)
andrew.thomases@ropesgray.com
Andrew T. Radsch (CSB # 303665)
andrew.radsch@ropesgray.com
ROPES & GRAY LLP
525 University Avenue
Palo Alto, California 94301
Tel.: (650) 617-4000
Fax.: (650) 617-4090

Attorneys for Non-Party
ROKU, INC.

---

[9] See https://www.axios.com/texas-coronavirus-reopening-e0104f38-f8ce-4142-a56f-846a7c7b60db.html (last accessed May 1, 2020).