# EXHIBIT A

BRETT J. WILLIAMSON (SB # 145235)
(bwilliamson@omm.com)
CAMERON W. WESTIN (SB # 290999)
(cwestin@omm.com)
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone: (949) 823-6900
Facsimile: (949) 823-6904

Attorneys for *Amicus Curiae* HULU, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Canon, Inc.<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TCL Electronics Holdings, Ltd., et al.<br><br>　　　　　Defendants. | Case No. 3:20-mc-80079-JCS<br><br>**BRIEF OF *AMICUS CURIAE* HULU, LLC** |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

HULU'S AMICUS POSITIONS ............................................................................................... 2

    I.    Roku's Motion Has Ramifications for Hulu's Interests, Which Should Be Considered in Deciding Roku's Motion ........................... 2

    II.    Imposing Remote Review of Source Code in Patent Litigation Is Inherently and Incurably Insecure ....................................................... 4

    III.    The Potential Consequences of Making Source Code Available for Remote Review Are Significant ....................................................... 7

CONCLUSION .......................................................................................................................... 8

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ctr. for Biological Diversity v. Jewell*,
   2013 WL 4127790 (N.D. Cal. Aug. 9, 2013) .................................................................... 2

*In re Roxford Foods Litig.*,
   790 F. Supp. 987 (E.D. Cal. 1991) .................................................................................. 3

*Infineon Techs. N. Am. Corp. v. Mosaid Techs., Inc.*,
   2006 WL 3050849 (N.D. Cal. Oct. 23, 2006) .................................................................. 3

*NGV Gaming, Ltd. v. Upstream Point Molate, LLC*,
   355 F. Supp. 2d 1061 (N.D. Cal. 2005) ........................................................................... 3

**OTHER AUTHORITIES**

Loren et al., *Computer Software-Related Litigation, Discovery and the Overly-Protective Source Code*, Fed. Courts Law Review Vol. 6, Issue 1 (2012)) ......................................................................................................... 5, 7, 8

U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, Standing Order Regarding Pretrial Procedures in Civil Cases Assigned to Chief District Judge Rodney Gilstrap During The Present COVID-19 Pandemic ............................................................................................................... 2

U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets, § 9(c) ................................................................................................................................ 5

## INTRODUCTION

Hulu, LLC ("Hulu") is a provider of both live and on-demand streaming video. Hulu is headquartered in Santa Monica, California. Since its initial release to the public in March of 2008, Hulu has offered streaming video-on-demand ("SVOD") services, and in May of 2017 it launched the Hulu Live service, offering subscribers the ability to have access to the same TV channels provided by traditional cable providers, delivered through Hulu's streaming Internet platform. Hulu's SVOD and Live services are subscription-based, with an announced total of over 30 million subscribers as of December 2019.[1] Hulu's services are available through a web browser-based platform, as well as on the platforms of numerous device makers, including Roku, Inc. ("Roku").[2]

Hulu is not a party to the underlying litigation brought by Canon, Inc. ("Canon") in the Eastern District of Texas.[3] Nor is Hulu's source code the subject of discovery in that litigation or the subject of Roku's Motion To Modify And/Or Quash Plaintiff Canon Inc.'s Subpoena and For A Protective Order To Prevent Remote Source Code Review (ECF No. 1) (hereinafter "Roku's Motion"). As Roku's Motion correctly notes, however, the potential exposure of Roku's source code to malicious actors poses a threat to Hulu's own efforts to secure its streaming content and services. ECF No. 1 at 15 ("[A]ny breach could also compromise the intellectual property of Roku's content partners, such as Netflix and Hulu."). In addition, Hulu, like numerous other California-based technology companies

---

[1] *See* Declaration of Cameron W. Westin In Support of Brief of *Amicus Curiae* Hulu, LLC (filed concurrently herewith, hereinafter "Westin Decl.") Ex. 1 (The Walt Disney Company, First Quarter Earnings for Fiscal 2020 (Feb. 4, 2020), available at https://thewaltdisneycompany.com/app/uploads/2020/02/q1-fy20-earnings.pdf).

[2] *See* Westin Decl., Ex. 2 (Hulu - Supported Devices, available at https://help.hulu.com/s/article/supported-devices?language=en_US).

[3] *Canon Inc. v. TCL Elecs. Holdings Ltd.*, Case No. 2:18-cv-00546-JRG (E.D. Tex. Dec. 27, 2018).

involved in patent litigation in courts throughout the country, is also often required to make its own highly valuable and sensitive source code available for inspection during discovery. Hulu has significant and serious concerns about the diminished security to that source code if similar requests are granted in patent cases where Hulu's source code has been or will be made available for inspection.

Hulu recognizes the unprecedented challenges posed to existing discovery procedures during the COVID-19 pandemic. Hulu appreciates and takes seriously the Court's expectation that counsel and the parties will make extra efforts to resolve discovery issues amicably, ECF No. 12, and the Eastern District of Texas's directive that parties advance the "goal of allowing code review to efficiently and effectively continue . . . while protecting the security of the source code—which is highly sensitive and valuable information—as best as possible under the circumstances," U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, Standing Order Regarding Pretrial Procedures in Civil Cases Assigned to Chief District Judge Rodney Gilstrap During The Present COVID-19 Pandemic, ¶ 19. Proposals such as Canon's, however, which seek to force companies to expose their highly sensitive and valuable source code to the vulnerabilities inherent in remote inspection, do not protect that code "as best as possible under the circumstances." Hulu, by and through its undersigned counsel, submits this amicus brief so that the Court may consider the implications of forcing remote review of source code to Hulu and other technology companies.

## HULU'S AMICUS POSITIONS

### I. Roku's Motion Has Ramifications for Hulu's Interests, Which Should Be Considered in Deciding Roku's Motion

"District courts frequently welcome amicus briefs from non-parties concerning legal issues that have potential ramifications beyond the parties directly involved or if the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ctr. for*

*Biological Diversity v. Jewell*, 2013 WL 4127790, at *4 (N.D. Cal. Aug. 9, 2013) (*quoting NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, 355 F. Supp. 2d 1061, 1067 (N.D. Cal. 2005)). "There are no strict prerequisites that must be established prior to qualifying for amicus status; an individual seeking to appear as *amicus* must merely make a showing that his participation is useful to or otherwise desirable to the court." *Infineon Techs. N. Am. Corp. v. Mosaid Techs., Inc.*, 2006 WL 3050849, at *3 (N.D. Cal. Oct. 23, 2006) (*quoting In re Roxford Foods Litig.*, 790 F. Supp. 987, 997 (E.D. Cal. 1991)).

Roku's Motion, and the risk to Hulu's source code that Roku's Motion seeks to avoid, has direct ramifications for Hulu. Hulu's streaming content is provided securely on compatible devices from numerous manufacturers, including various digital media players sold by Roku.[4] The content provided by Hulu's services and its technology drives the demand for Hulu's subscription services, and comes from content partners including networks, cable television providers, studios, and from Hulu's own developed content. Declaration of Brett Henry In Support of Brief of *Amicus Curaie* Hulu, LLC (filed concurrently herewith, hereinafter "Henry Decl.") at ¶ 4. Hulu has strict obligations to its content providers to maintain their content in a secure and piracy-free environment. Henry Decl., ¶ 5. Hulu must do so in an environment where it receives *millions* of malicious requests for data from hackers *per day*. Henry Decl., ¶ 6. Hulu thus expends significant efforts to ensure that all of its device manufacturing partners' systems, including Roku's, contain the strongest security measures possible to protect its services' content from being improperly downloaded and pirated. For example, Roku's native development kit ("NDK") is extremely restrictive, and only a subset of Hulu programmers has

---

[4] *See* Westin Decl., Ex. 3 (Hulu | Roku Channel Store, available at https://channelstore.roku.com/details/2285/hulu); Ex. 4 (Hulu - Supported Roku Models, available at https://help.hulu.com/s/article/supported-roku?language=en_US). *See also* ECF No. 1 at 2, 15.

- 3 -   BRIEF OF *AMICUS CURIAE* HULU, LLC
CASE NO. 3:20-MC-80079-JCS

access to it. Henry Decl., ¶ 15. Were Roku's source code to be exposed publicly or to malicious actors—a possibility that would increase significantly due to remote review (*see* ECF No. 1 at 13-14)—Hulu's content would also be less protected from such hacking, and its relationship with content partners could in turn be irreparably damaged. Henry Decl., ¶¶ 16-17.

Moreover, Canon's attempt to force Roku to expose its source code to the risks inherent in remote review has ramifications for Hulu and other technology companies beyond the immediate dispute. Hulu, like Roku, is often required to make its own highly sensitive and valuable source code available for inspection in connection with patent litigations.[5] To do so, Hulu, like Roku, depends on protective orders that limit this inspection to standalone computers that are isolated from the Internet and local or external networks.[6] Canon's request that the Eastern District of Texas modify the protective order under which Roku's source code was originally produced would mean that Hulu, as well as other technology companies subject to discovery in the legal process, may similarly be forced to forego the time-tested practice of source code review on secured standalone computers for the inherently more vulnerable risks associated with connecting that source code and transmitting it on the Internet.

## II. Imposing Remote Review of Source Code in Patent Litigation Is Inherently and Incurably Insecure

The industry standard of permitting source code review only on standalone

---

[5] Like Roku in the underlying Eastern District of Texas litigation, Hulu is also regularly subpoenaed to make its source code available for inspection in connection with litigations where Hulu is not a party. Westin Decl., Ex. 5 (third party subpoena for Hulu source code in *Uniloc 2017 LLC v. Vudu, Inc.*, C.A. No. 19-183 (CFC) (D. Del. Jan. 30, 2019)).

[6] *See, e.g.*, *DivX, LLC v. Hulu, LLC*, 2:19-cv-1606 (PSG)(DFMx), ECF No. 111, 15 (C.D. Cal. Mar. 5, 2019); *Sound View Innovations, LLC v. Hulu, Inc.*, 2:17-cv-04146-JAK-PLA, ECF No. 57, 16 (C.D. Cal. June 2, 2017); *Transvideo Elec., Ltd. v. Hulu, Inc.*, 13-cv-1399 (LPS), ECF No. 43, 20 (D. Del. Aug. 7, 2013).

non-Internet connected computers is based on the established understanding that source code made available for inspection on a computer connected to the Internet is more vulnerable to malicious access or hacking by unauthorized third parties. *See, e.g.*, Westin Decl., Ex. 6 (Loren et al., *Computer Software-Related Litigation, Discovery and the Overly-Protective Source Code*, Fed. Courts Law Review Vol. 6, Issue 1 (2012)) at 59 ("Prohibiting the stand-alone computer from being connected to the internet or existing internal networks is an appropriate solution to guard against unauthorized access via the 'back door' of the Internet or an Intranet in the same office."). Indeed, this District's Model Protective Order for Patent Cases anticipates source code being made available for inspection and provides for precisely these protections, requiring that "source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers." U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information, and/or Trade Secrets, § 9(c).

As noted in Section I, *supra*, Hulu relies on such protections in connection with discovery of its own source code, making its source code available for inspection by opposing counsel and experts only on standalone computers with no connectivity to the Internet, and in secure facilities at outside counsel's office in order to strictly control who has access, what tools can be connected to the reviewing device, and what devices are brought into and out of the review room.

The risk posed by the exposure of its highly sensitive and valuable source code is so great that Hulu imposes restrictions on its own engineers' access to that code. Their access is limited to only the portions of the source code necessary to perform their assigned tasks, rather than to the vast swaths of source code that may be made available during litigation. Henry Decl., ¶ 9. Moreover, Hulu engineers are not permitted any access to source code unless they are physically on the

premises at Hulu, or utilizing Hulu's secure and heavily regulated virtual private network ("VPN"). Henry Decl., ¶ 10. That VPN access, like all access, is limited to the portions of code necessary to complete the engineer's assigned tasks, guarded by multi-factor authentication requirements, and monitored to ensure that engineers do not violate established security protocols during use or attempt to venture beyond their authorized portions of the source code. *Id*. To implement these security protocols, Hulu spends significant financial and physical security resources every time an engineer is authorized to access its source code remotely. *Id*. No such authorization can be provided in connection with outside experts or opposing counsel in the course of litigation, due to the heightened risk and lack of complete control over their activities, whether malicious or merely lacking in the necessary security protocols. Henry Decl., ¶ 11.

Allowing remote review of Hulu's source code by opposing counsel and their retained experts would introduce myriad security challenges, even if those counsel and experts acted according to the protocols proposed by Canon. *See* ECF No. 1 at 9-10. Counsel and experts cannot be permitted to review the source code remotely via their own personal computers, because Hulu would be unable to evaluate whether those computers were free from malware or other malicious software through which an unauthorized third-party might access the source code. Henry Decl., ¶ 13. Instead, Hulu would be required to prepare and provide, for each counsel conducting the review and for each expert, a computer and monitoring equipment securely connected to its VPN (or containing encrypted versions of the source code itself), and ship these materials to the reviewing experts. Henry Decl., ¶ 13. For each individual reviewing the source code, Hulu would then need to employ one person to monitor an expert's activities via a Wi-Fi or cellular camera during the review, while another person monitors usage of the computer to ensure no improper activity occurs. Henry Decl., ¶ 12; *see also* ECF No. 1 at 13-15. Even if Hulu had the ability to enforce such supervision and surveillance for limited

periods of time during regular business hours, the cost in resources and employee time to Hulu (multiplied by each individual granted remote access to the source code) would be significant, if not prohibitive.

Despite such efforts, the risks inherent in allowing remote review of source code by multiple individuals in connection with litigation cannot be eliminated. Source code made available for third party inspection on computers connected to the Internet is inherently more vulnerable to malicious activity. Henry Decl., ¶ 8. For example, even when source code is stored on a computer in encrypted form, during review the source code may necessarily be unencrypted inside a computer's memory, or on the screen itself. Henry Decl., ¶ 14; *see also* Westin Decl., Ex. 6 (Loren et al., *Computer Software-Related Litigation*) at 23. This unencrypted source code is particularly susceptible to hacking. *Id*. Making source code available for inspection on standalone computers significantly reduces these risks by limiting that unencrypted viewing to an isolated room with no Internet connection and no available recording devices. *Id*.

Thus, even under the best of circumstances, assuming total compliance with applicable protective orders by opposing counsel and their experts, requiring remote review of Hulu's source code by an opposing litigants' attorneys and experts presents unjustifiable costs and risks to Hulu. These costs and risks to Hulu would multiply with each additional individual reviewing the code. Henry Decl., ¶ 13.

### III. The Potential Consequences of Making Source Code Available for Remote Review Are Significant

The potential consequences, both to Hulu's content and its business relationships, of unsecure remote reviewing of ***Roku's*** source are discussed above. *See* Section I, *supra*. The potential consequences of ***Hulu's*** source code being subjected to such insecure protocols are, to Hulu, far greater.

Hulu's source code is among its most vital assets. Henry Decl., ¶ 7. That source code is the product of investing enormous sums of money and countless

- 7 -

BRIEF OF *AMICUS CURIAE* HULU, LLC
CASE NO. 3:20-MC-80079-JCS

person-hours on the part of Hulu's engineers over the companies' twelve years of existence, *id.*, resulting in numerous filed and issued U.S. patents and the development of countless additional trade secrets.[7]  If, however, this proprietary source code were to be made publicly available, the source code's value could irreparably be destroyed.  *See* Westin Decl., Ex. 6 at 21 ("[I]n this age of rapid and global dissemination, parties fear that if proprietary source code being disclosed were to be leaked to the outside world the value could be totally destroyed in a matter of hours, if not minutes, and could never be recaptured.").

Moreover, were Hulu's operating system ("OS") source code to become publicly available, malicious actors could hijack that code to essentially sell access to a free and uncontrolled version of Hulu, or download and pirate Hulu's proprietary and copyrighted content.  Henry Decl., ¶ 18.  Hulu would thus lose its paying subscribers drawn to Hulu's content and its proprietary user interface, and its ability to sell advertisements contained in that content (Hulu's other primary source of revenue).  Moreover, such a scenario would deeply impair Hulu's relationships with its content providers, and thus Hulu's entire business model.  *Id*.

## CONCLUSION

Hulu's source code, like that of numerous technology companies located in this District and throughout the State, is among its most valuable assets.  Placing that source code at increased risk of falling into the hands of malicious actors presents dire consequences for Hulu and its business.

---

[7] *See* Westin Decl., Ex. 7 (U.S. Patent and Trademark Website listing 151 issued U.S. Patents and published U.S. patent applications assigned to Hulu, LLC, available at https://assignment.uspto.gov/patent/index.html#/patent/search/resultAssignee?assigneeName=HULU%20LLC).

| | | |
|---|---|---|
| 1 | Dated: May 13, 2020 | O'MELVENY & MYERS LLP |
| 2 | | BRETT J. WILLIAMSON |
| 3 | | CAMERON W. WESTIN |

By: */s/ Brett J. Williamson*

Brett J. Williamson (SB # 145235)
bwilliamson@omm.com
Cameron W. Westin (SB # 290999)
cwestin@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, California  92660
Telephone: (949) 823-6900
Facsimile:  (949) 823-6904

Attorneys for *Amicus Curiae*
Hulu, LLC

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 13, 2020, a true and accurate copy of the BRIEF OF AMICUS CURIAE HULU, LLC was electronically filed with the Court to be served by operation of the Court's electronic filing system.

Dated: May 13, 2020                                 Respectfully submitted,

                                        By:    */s/ Brett J. Williamson*
                                               Brett J. Williamson